IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 7, 2002 Session

## HEIRS OF NEIL G. ELLIS  v.  THE ESTATE OF VIRGIE MAE ELLIS

**Appeal by Permission from the Court of Appeals, Middle Section**
**Probate Court for Rutherford County**
**Hon. David Loughry, Judge**

------------------

**No. M1999-00897-SC-R11-CV - Filed March 25, 2002**

------------------

The issue in this case is whether property held in a tenancy by the entirety is subject to the 120-hour survival rule contained in section 31-3-120 of the Tennessee Uniform Simultaneous Death Act. Three days after her husband's death, Mrs. Ellis died of unrelated natural causes, and her will was admitted to probate.  The husband's heirs sought to intervene in the probate proceeding, claiming that because Mrs. Ellis did not survive her husband for 120 hours, section 31-3-120 deems both to have died "simultaneously."  Consequently, they argued, Tennessee Code Annotated section 31-3-104 authorized them to seek a one-half interest in the entireties property.  The trial court denied the motion to intervene, and the Court of Appeals affirmed.  On appeal to this Court, we hold that section 31-3-120 does not require one spouse to survive the other by 120 hours in order to obtain fee simple title to property formerly held by the entirety.  We also hold that the General Assembly, in enacting section 31-3-120, did not intend to define the term "simultaneously" in section 31-3-104 as meaning "within 120 hours."  Instead, we conclude that the legislature intended that this term should continue to receive its ordinary construction, meaning "at the same time."  The judgment of the Court of Appeals is affirmed.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the
Court of Appeals Affirmed; Case Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Laurie Y. Young, Murfreesboro, Tennessee, for the appellants, the Heirs of Neil G. Ellis, consisting of William Oliver Ellis, James T. Ellis, III, Linda Wright, Henry Louis Bunce, Marjorie B. Edwards, Catherine B. Hall, Erma Doyle Davis, Vera Sue Haire, Empie L. Bunce, Margaret A. Brown, James F. Bunce, Karen Proctor Hall, and William T. Proctor.

William W. Burton, Murfreesboro, Tennessee, for the appellee, the Estate of Virgie Mae Ellis.

# OPINION

## FACTUAL BACKGROUND

Neil Ellis and Virgie Mae Ellis were married in 1944, and shortly thereafter, each executed reciprocal wills. The wills did not identify either a contingent or a residual beneficiary, nor did they provide for the disposition of the couple's property in the event of their simultaneous or near-simultaneous death. Instead, the material provision of each will simply bequeathed all of their property to the other: "I will, devise and bequeath all of my property, real, personal and mixed, and wherever situated to [my spouse], absolutely." The couple had no children.

On February 11, 1999, Mr. Ellis died of natural causes. Three days later, his wife also passed away of natural causes, and her will was admitted into probate the following month. On August 3, 1999, the appellants in this case, the heirs of Mr. Ellis, filed a motion to intervene in the probate proceedings, claiming that section 31-3-104 of the Tennessee Uniform Simultaneous Death Act ("TUSDA") entitled them to a one-half share of the Ellises' property held as tenants by the entirety.[1] In support of their motion to intervene, the appellants argued that because Mrs. Ellis failed to survive her husband by 120 hours—the default survival period required by Tennessee Code Annotated section 31-3-120[2] for a beneficiary to receive a devise under a will—then, in the absence of any provision in the will to the contrary, the TUSDA deems both to have died simultaneously for property distribution purposes under section 31-3-104.

The estate of Mrs. Ellis objected to the intervention, arguing that because entireties property does not pass to the surviving spouse through a devise, section 31-3-120 does not require a spouse to survive by 120 hours to obtain fee simple title to property formerly held by the entirety. The estate also argued that the appellants were not entitled to claim a one-half share of the entireties property under section 31-3-104 because the couple did not die "simultaneously," or "at the same time," as required by the plain language of that section.

---

[1] This section provides that "[w]here there is no sufficient evidence that two (2) joint tenants or tenants by the entirety have died otherwise than simultaneously, the property so held shall be distributed one-half (½) as if one had survived and one-half (½) as if the other had survived. . . ."

[2] In relevant part, Tennessee Code Annotated section 31-3-120 provides as follows:

> (a)    An individual who fails to survive the decedent by one hundred twenty (120) hours is deemed to have predeceased the decedent for purposes of the homestead allowance, year's support allowance, exempt property, elective share and intestate succession, and the decedent's heirs are determined accordingly.
>
> (b)    A devisee who fails to survive the testator by one hundred twenty (120) hours is deemed to have predeceased the testator, unless the will of the decedent contains language dealing explicitly with simultaneous deaths or deaths in a common disaster or requiring that the devisee survive by a stated period of time in order to take under the will.

Subsection (c) further requires that survival by 120 hours must be shown by "clear and convincing evidence."

-2-

After holding a hearing on September 15, 1999, the trial court denied the appellants' motion to intervene, and this decision was affirmed by the Court of Appeals. The intermediate court held that section 31-3-104 did not apply for two reasons. First, it noted that because the couple's entireties property passed to Mrs. Ellis in fee simple immediately upon her husband's death, her estate held no entireties property to distribute to her husband's heirs. Second, the court concluded that because the Ellises did not die "at the same time," section 31-3-104 was inapplicable. Rejecting the appellants' argument that the term "simultaneously" in section 31-3-104 should be interpreted to mean "within 120 hours," the Court of Appeals looked to case law from other states and held that the term "simultaneously" means "at the same time."[3]

We then granted permission to appeal to Mr. Ellis's heirs to address whether a spouse holding property as a tenant by the entirety must survive the other spouse by 120 hours before taking that property in fee simple absolute. For the reasons given herein, we hold that section 31-3-120 does not alter the common law operation of estates by the entirety, nor does that section affect the settled meaning of the term "simultaneously" as that term is used in section 31-3-104. The judgment of the Court of Appeals is affirmed.

## STANDARD OF APPELLATE REVIEW

The issues in this case present questions concerning the proper construction to be given to Tennessee Code Annotated sections 31-3-104 and 31-3-120. Because "issues of statutory construction are questions of law," Stewart v. State, 33 S.W.3d 785, 791 (Tenn. 2000); see also State v. Williams, 38 S.W.3d 532, 535 (Tenn. 2001); Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 802 (Tenn. 2000), we review the issues in this case under a *de novo* standard of review, according no presumption of correctness to the conclusions reached by the trial court, see Walker v. Board of Prof'l Responsibility, 38 S.W.3d 540, 544 (Tenn. 2001); Reeves v. Granite State Ins. Co., 36 S.W.3d 58, 60 (Tenn. 2001); Hawks v. City of Westmoreland, 960 S.W.2d 10, 15 (Tenn. 1997).

---

[3] The court conducted this analysis pursuant to Tennessee Code Annotated section 31-3-107 (2001), which provides that "[t]his chapter shall be so construed and interpreted as to effectuate its general purpose to make uniform the law in those states which enact it."

The Court of Appeals also noted that the record was unclear as to whether either spouse held any property in his or her own name at the time of their deaths. Although not relevant to the issues raised in this appeal, Mrs. Ellis was appointed as her husband's conservator in 1998, and she apparently sold all of his property, consisting largely of real estate and equipment, to pay for the costs of his care and treatment. The Court of Appeals correctly noted that while the proceeds from the sale of any entireties property retains its character as entireties property, see Burt v. Edmonds, 224 Tenn. 403, 409-10, 456 S.W.2d 342, 345 (1969); White v. Watson, 571 S.W.2d 493, 495 (Tenn. Ct. App. 1978), the proceeds of the sale of any property owned individually by Mr. Ellis would also retain its character as his individual property. Noting that any devise of this individual property would lapse under each will, the Court of Appeals remanded the case to determine whether any of the property was held, either in its original form or in the form of sale proceeds, by either spouse individually.

## APPLICATION OF THE TENNESSEE UNIFORM
## SIMULTANEOUS DEATH ACT

Although both Mr. and Mrs. Ellis left wills purporting to dispose of their respective estates, only the will of Mrs. Ellis has been admitted to probate and is before the Court today. Nevertheless, our resolution of the issues in this case must naturally rely upon the construction of both wills, if only because the composition of Mrs. Ellis's estate depends largely upon whether she received any of her husband's interests in property following his death. As such, the arguments of both parties are primarily concerned with whether Mr. Ellis's interests in the couple's entireties property passed to his wife immediately upon his death or whether these interests remained in his estate due to her death only three days later. With this brief background in mind, therefore, we turn to the specific arguments advanced by the parties.

### *SCOPE OF THE 120-HOUR SURVIVAL RULE CONTAINED IN*
### *TENNESSEE CODE ANNOTATED SECTION 31-3-120*

The appellants first argue that as a result of the addition of section 31-3-120 to the TUSDA in 1997, see 1997 Tenn. Pub. Acts. ch. 426, § 16, Mrs. Ellis was required to survive her husband by 120 hours before she could obtain fee simple title to property formerly held by the entirety. In support of their position, the appellants argue (1) that application of the 120-hour survival rule is not limited to common disaster cases, and (2) that this survival rule applies to all cases in which a spouse fails to survive the other by this statutory time period. As such, they conclude, because Mrs. Ellis did not survive her husband for at least 120 hours, none of her husband's interests in the couple's entireties property can comprise any part of her estate.

We agree with the appellants that section 31-3-120(b) is in no way limited to common disaster cases and that this section may apply even when spouses or other beneficiaries die of separate and unrelated causes. As demonstrated by its language, this section not only applies in cases when the will does not contain language addressing simultaneous deaths, but it also applies when the will merely fails to require "that the devisee survive by a stated period of time in order to take under the will." Consequently, the scope of section 31-3-120 reaches beyond common disaster cases, and it sets forth a default rule of substantive law that applies in the absence of a contrary survival provision in the will itself. Cf. Tenn. Code Ann. § 31-3-106 ("This chapter shall not apply in the case of wills, living trusts, deeds, or contracts of insurance wherein provision has been made for the distribution of property different from the provisions hereof."); Brundige v. Alexander, 547 S.W.2d 232, 234 (Tenn. 1976) (stating that the provisions of the TUSDA constitute "rule[s] of substantive law" and are not merely presumptions of survivorship or rules of evidence).

Nevertheless, even though section 31-3-120 does apply outside of common disaster cases, we conclude that it only partially affects the disposition of Mr. Ellis's property in this case. Significantly, section 31-3-120 does not apply to all types of property interests, and its language is quite specific as to those interests affected by the 120-hour survival rule. For example, subsection (a) states that the 120-hour survival rule applies for purposes of "the homestead allowance, year's

support allowance, exempt property, elective share and intestate succession." In addition, subsection (b) applies to all interests passed by "the will of the decedent." However, no other interest in property is specifically covered by the language of section 31-3-120.

Therefore, with regard to any property held by Mr. Ellis as a tenant by the entirety, we conclude that the passing of this property to his wife's estate was unaffected by the enactment of section 31-3-120. Importantly, no part of section 31-3-120 addresses property held by the entirety. Subsection (a) does not include entireties property within its list of affected interests, and subsection (b) does not include entireties property because it only affects "devisees," or those persons "designated in a will to receive a devise." Cf. Tenn. Code Ann. § 31-1-101(3). Because the law is well settled that "the interest of a tenant by the entireties cannot be passed by will," Brundige, 547 S.W.2d at 236; see also White v. Watson, 571 S.W.2d 493, 495 (Tenn. Ct. App. 1978)—meaning that a surviving spouse in this context is not a "devisee" under the law—section 31-3-120(b) simply does not apply to affect the disposition of entireties property. Accordingly, we disagree with the appellants that section 31-3-120 requires a spouse to survive the other by 120 hours in order to obtain fee simple title to property formerly held by the entirety.

With regard to any of Mr. Ellis's property that would pass under his will, however, this "individual" property is subject to the 120-hour survival rule. Because Mr. Ellis made no provision requiring "that [his wife] survive [him] by a stated period of time in order to take under [his] will," section 31-3-120 operates as a default rule to require his wife to survive him by 120 hours to take any devise under his will. Accordingly, because his wife did not survive him for the required statutory period, she is deemed to have predeceased him as a matter of law, and his individual property, if any, could not have passed to her estate.[4]

### CONSTRUCTION OF TERM "SIMULTANEOUSLY" IN
### TENNESSEE CODE ANNOTATED SECTION 31-3-104

The appellants next argue that even if section 31-3-120 does not strictly apply to property held by the entirety, this Court should nevertheless construe the term "simultaneously" in Tennessee Code Annotated section 31-3-104 to mean "within 120 hours." More specifically, they argue that the legislature enacted section 31-3-120 specifically to define the term "simultaneously" as that term is used throughout the TUSDA. Consequently, the appellants maintain that when these two sections are construed together, section 31-3-104 requires a spouse to survive the other by 120 hours in order to obtain fee simple title to property formerly held by the entirety.

---

[4] Importantly, the anti-lapse provisions of Tennessee Code Annotated section 32-3-105 (2001) do not apply to save these devises for the benefit of Mrs. Ellis's estate. Unlike Brundige, Mr. and Mrs. Ellis here both died without "issue," meaning that they died without any adopted or natural-born "lineal descendants." Cf. Tenn. Code Ann. § 31-1-101(6); White v. Kane, 178 Tenn. 469, 472-73, 159 S.W.2d 92, 94 (1942). Consequently, the anti-lapse statute does not apply in this case, and it cannot operate to save any devise made by one spouse to the other. Therefore, Mr. Ellis's lapsed devises remain in his estate and pass to his heirs through the laws of intestate succession.

Initially, the appellants' arguments appear to have some merit because, ordinarily, "[a] statute should be construed, if practicable, so that its component parts are consistent and reasonable." <u>See</u> <u>Marsh v. Henderson</u>, 221 Tenn. 42, 48, 424 S.W.2d 193, 196 (1968). However, the polestar of statutory interpretation has always been the intent of the legislature. As such, where the "carrying out of the legislative intention, which is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed," then the legislative intent should be applied over "the literal import of the words." <u>Tennessee Title Co.</u> <u>v. First Fed. Sav. & Loan Ass'n</u>, 185 Tenn. 145, 154, 203 S.W.2d 697, 700 (1947). Upon an examination of the statutes in this case, we conclude that the appellants' proposed interpretation would not accurately reflect the General Assembly's intention in this regard.

A venerable principle of Tennessee common law has been that property held in a tenancy by the entirety passes immediately to the surviving spouse upon the death of the other spouse. Because each spouse is "seized of the whole or the entirety and not of a share, moiety, or divisible part," <u>Sloan v. Jones</u>, 192 Tenn. 400, 402, 241 S.W.2d 506, 507 (1951), the death of one spouse "does not put an end to the seisin of the survivor," <u>Bennett v. Hutchens</u>, 133 Tenn. 65, 69, 179 S.W. 629, 630 (1915). Instead, upon the death of one spouse, the surviving spouse possesses an undivided interest in the whole estate that is no longer subject to the undivided interest of another in that estate, or, in other words, the surviving spouse possesses the property in fee simple absolute. <u>Id.</u>

Had the General Assembly intended that the appellants' construction of sections 31-3-120 and 31-3-104 be given effect, it is clear that the legislature would have significantly changed the common law of this state. After all, adopting this construction would essentially mean that the undivided interest of the surviving spouse remains subject to that of the deceased spouse for 120 hours, even though the deceased spouse cannot lawfully be seized of any entirety interest under the common law. Nevertheless, while the General Assembly unquestionably has the constitutional and legislative authority to change the common law of this state, <u>see</u> <u>Lavin v. Jordon</u>, 16 S.W.3d 362, 368 (Tenn. 2000), it must make clear its intention to do so, <u>see</u> <u>Kradel v. Piper Indus., Inc.</u>, 60 S.W.3d 744, 751 (Tenn. 2001). Without some clear indication to the contrary, we simply will not presume that the legislature intended to change the common law by implication. <u>See</u> <u>Lavin</u>, 16 S.W.3d at 368.

Examining the provisions of the TUSDA as a whole, we see no clear indication that the General Assembly intended to revise the common law operation of estates by the entirety. First, no express language appears in the 1997 amendments to the TUSDA to evidence such an intention. Second, as discussed above, section 31-3-120 does not address the disposition of property held by the entirety, though the statute does cover the disposition of property held in other common law estates. Consequently, while it appears that the term "simultaneously" may mean "within 120 hours" in some situations under the TUSDA—such as perhaps in sections 31-3-102 and 31-3-103—it is not clear that the legislature intended a similar construction with regard to the use of that term in section 31-3-104.

Moreover, the legislative background of the 1997 amendments to the TUSDA confirms that the General Assembly did not intend to change the common law operation of estates by the entirety. As evidenced by the similarity of the language, the 120-hour survival rule of section 31-3-120 was taken from sections 2-104 and 2-601 of the Uniform Probate Code of 1969 ("UPC") and from sections 2 and 3 of the Revised Uniform Simultaneous Death Act of 1993 ("Revised USDA").[5] However, the 120-hour survival rule contained in sections 2-104 and 2-601 of the UPC does not apply to property held by the entirety. Instead, the drafters of the UPC placed the disposition of entireties property in a separate section that deals generally with property in which co-owners possess a right of survivorship. See UPC § 2-702(c).[6] This approach is also consistent with the drafting of the Revised USDA, which likewise placed the rules governing entireties property in a section separate from those provisions forming the basis of the 1997 Tennessee legislation. See Revised USDA § 4.[7]

When the legislature enacts provisions of a uniform or model act without significant alteration, it may be generally presumed to have adopted the expressed intention of the drafters of that uniform or model act. See Kradel, 60 S.W.3d at 754 & n.6. However, when the legislature makes significant departures from the text of that uniform act, we must likewise presume that its departure was meant to express an intention different from that manifested in the uniform act itself. Cf. id. In this case, the General Assembly adopted a form of the 120-hour survival rule created by

---

[5] See also 2 Pritchard on Wills and Administration of Estates § 923.1 (Jack W. Robinson, Sr. & Jeff Mobley eds., 5th ed. Supp. 2000) (noting that section 31-3-120 "is based upon the provisions of the Uniform Probate Code"). The similarity noted above is most evident with the UPC sections. UPC section 2-104 reads as follows:

> An individual who fails to survive the decedent by 120 hours is deemed to have predeceased the decedent for purposes of homestead allowance, exempt property, and intestate succession, and the decedent's heirs are determined accordingly. . . .

Like section 31-3-120(c), UPC section 2-104 also sets forth a clear-and-convincing standard of proof. Further, UPC section 2-601 provides that

> [a] devisee who does not survive the testator by 120 hours is treated as if he predeceased the testator, unless the will of decedent contains some language dealing explicitly with simultaneous deaths or deaths in a common disaster, or requiring that the devisee survive the testator or survive the testator for a stated period in order to take under the will.

[6] This provision reads as follows:

> (c) Except as provided in subsection (d), if (i) it is not established by clear and convincing evidence that one of two co-owners with right of survivorship survived the other co-owner by 120 hours, one-half of the property passes as if one had survived by 120 hours and one-half as if the other had survived by 120 hours . . . .

This section concludes by confirming that "[f]or the purposes of this subsection, 'co-owners with right of survivorship' includes joint tenants, [and] tenants by the entireties . . . ."

[7] In relevant part, section 4 of the Revised USDA provides as follows:

> Except as provided in Section 6, if (i) it is not established by clear and convincing evidence that one of two co-owners with right of survivorship survived the other co-owner by 120 hours, one-half of the property passes as if one had survived by 120 hours and one-half as if the other had survived by 120 hours . . . .

According to section 1(1), the phrase "co-owners with right of survivorship" includes tenants by the entirety.

the UPC and the USDA, but it did not further adopt those uniform provisions that specifically apply to entireties property. Therefore, its omission in this regard must be taken as strong evidence that it did not intend to subject an estate by the entirety to the 120-hour survival rule of section 31-3-120.

Without a clear indication that the legislature intended to change the common law operation of estates by the entirety, we conclude that the legislature did not intend the construction urged by the appellants. Accordingly, the term "simultaneously" should continue to receive its ordinary construction, meaning "at the same time."[8] Because the record clearly establishes that Mr. Ellis and his wife did not die "at the same time," section 31-3-104 does not apply in this case, and the appellants cannot claim a one-half interest in the couple's entireties property. Accordingly, we hold that all property held by Mr. Ellis as a tenant by the entirety passed to his wife immediately upon his death and that her estate alone may claim this property in fee simple absolute.

The Court of Appeals in this case reached a similar conclusion by relying upon interpretations of the Uniform Simultaneous Death Act by other courts, but it did not specifically examine the effect that section 31-3-120 has upon the TUSDA's other provisions. Although courts should generally interpret the provisions of the simultaneous death act so as "to make uniform the law in those states which enact it," see Tenn. Code Ann. § 31-3-107, we note that such an interpretation is no longer practicable in this regard. With the addition of section 31-3-120 in 1997, Tennessee now has a "hybrid" simultaneous death scheme that combines elements of the original USDA adopted in 1940 with those of the Revised USDA adopted in 1993. This hybrid statutory scheme is unique to all the states enacting any form of the USDA, and as such, case law from other jurisdictions is not helpful to determine how the newly-added section 31-3-120 affects the other provisions of the TUSDA.

In any event, the Court of Appeals reached the correct resolution of the issues presented, and we therefore affirm its judgment. We also agree with the intermediate court that the record does not clearly support the parties' assertion that all of Mr. Ellis's property was held by the entirety. Consequently, we remand this case to the trial court to determine whether any part of Mrs. Ellis's estate is comprised of her husband's individual property.

**CONCLUSION**

In summary, we hold that because Tennessee Code Annotated section 31-3-120 applies in specific and limited cases, it does not require a tenant by the entirety to survive his or her spouse by 120 hours in order to obtain fee simple title to property formerly held by the entirety. We also hold that the General Assembly did not intend for the term "simultaneously" in Tennessee Code

---

[8] Cf. Walton & Co. v. Burchel, 121 Tenn. 715, 730, 121 S.W. 391, 394 (1907) ("[W]hen the proof shows that two persons are killed in a common sudden disaster, the presumption is that they died simultaneously; that is, that they both died at one and the same time."). This definition is also consistent with holdings of other courts interpreting similar provisions of the original USDA. See, e.g., McCurtis ex rel. Love v. Life Ins. Co. of N. Am., 849 F. Supp. 1141, 1146, nn.10-11 (S.D. Miss. 1994); Smith v. Smith, 317 S.W.2d 275, 282 (Ark. 1958); White v. Taylor, 286 S.W.2d 925, 928 (Tex. 1956); In re Estate of Villwock, 418 N.W.2d 1, 3 (Wis. Ct. App. 1987).

Annotated section 31-3-104 to be defined as meaning "within 120 hours." Instead, we conclude that the term is properly construed according to its ordinary import, meaning "at the same time." Accordingly, we affirm the judgment of the Court of Appeals and remand this case to the Rutherford County Probate Court for further proceedings consistent with this opinion.

Costs of this appeal shall be assessed jointly and severally to the heirs of Mr. Ellis, consisting of William Oliver Ellis, James T. Ellis, III, Linda Wright, Henry Louis Bunce, Marjorie B. Edwards, Catherine B. Hall, Erma Doyle Davis, Vera Sue Haire, Empie L. Bunce, Margaret A. Brown, James F. Bunce, Karen Proctor Hall, and William T. Proctor.

_____
WILLIAM M. BARKER, JUSTICE